lml/dlm

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MANUEL WASHINGTON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | Case No. 07-2301-JAR |
| **HOULIHAN'S RESTAURANTS** ) | |
| **INCORPORATED,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER
## GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Manuel Washington brings this *pro se* lawsuit against his former employer Houlihan's Restaurants, Inc. ("Houlihan's"), alleging race discrimination and violation of his constitutional rights pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII")[1] and 42 U.S.C. § 1981. Plaintiff alleges defendant violated plaintiff's constitutional rights and discriminated against him based upon his African-American ancestry, when it harassed and ultimately terminated him. This matter is before the Court on defendant's Motion for Summary Judgment (Doc. 38). Plaintiff has not filed a response and the time to do so has expired.[2] As explained more fully below, defendant's motion is granted.

---

[1] 42 U.S.C. § 2000e.

[2] *See* D. Kan. R. 6.1(d)(2) (requiring a response to a dispositive motion to be filed within 23 days). Moreover, on June 27, 2008, Magistrate Judge Waxse issued a Notice and Order to Show Cause why this case should not be dismissed with prejudice for plaintiff's failure to appear at the final pretrial conference and to participate in the preparation of the proposed pretrial order (Doc. 37). Plaintiff responded in writing to this Court, extending his apologies and promising to abide by all future requirements of the Court. The Court does not dismiss plaintiff's case on these grounds, however, but on the grounds that defendant has demonstrated that it is entitled to judgment as a matter of law under Fed. R. Civ. P. 56(e), as fully explained in this Order.

**I.     Standard**

Under D. Kan. Rule 7.4, a "failure to file a brief or response within the time specified . . . shall constitute a waiver of the right thereafter to file such brief or response. . . ."[3] Furthermore, if a "respondent fails to file a response within the time required . . . the motion will be considered and decided as an uncontested motion and ordinarily will be granted without further notice."[4] Nevertheless, "[i]t is improper to grant a motion for summary judgment simply because it is unopposed."[5] This will be the case where the movant fails to make out a prima facie case for summary judgment.[6] It is the role of the Court to ascertain whether the moving party has sufficient basis for judgment as a matter of law.[7] In so doing, the Court must be certain that no undisclosed factual dispute would undermine the uncontroverted facts.[8]

Summary judgment is appropriate if the moving party "show[s] that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law."[9] A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[10] An

---

[3] D. Kan. R. 7.4. While the Court notes that plaintiff is a *pro se* litigant, his status does not excuse him from compliance with procedural rules, nor from the consequences of non-compliance. *See Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994) (insisting that *pro se* litigants follow procedural rules and citing various cases dismissing *pro se* cases for failure to comply with the rules).

[4] D. Kan. R. 7.4.

[5] *Thomas v. Bruce*, 428 F. Supp. 2d 1161, 1163 (D. Kan. 2006) (quoting *E.E.O.C. v. Lady Baltimore Foods, Inc.*, 643 F. Supp. 406, 407 (D. Kan. 1986) (citing *Hibernia Nat'l Bank v. Administracion Ctl. Sociedad Anonima*, 776 F.2d 1277, 1279 (5th Cir. 1985))). The Court notes, however, that failing to file a timely response to a motion for summary judgment still waives the right to thereafter respond or otherwise controvert the facts alleged in the motion. D. Kan. R. 7.4.

[6] *Id*. (citations omitted).

[7] *Id*. (citing *Lady Baltimore Foods*, 643 F. Supp. at 407).

[8] *Id*.

[9] Fed. R. Civ. P. 56(c).

[10] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[11]  The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[12]

The moving party bears the initial burden of providing the Court with the basis for the motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[13]  "A movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim."[14]  The burden may be met by showing that there is no evidence to support the nonmoving party's case.[15]  If this initial burden is met, the nonmovant must then "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[16]  When examining the underlying facts of the case, the Court is cognizant that all inferences must be viewed in the light most favorable to the nonmoving party and that it may not make credibility determinations or weigh the evidence.[17]

## II.   Uncontroverted Facts

All material facts set forth by defendant are deemed admitted for the purpose of summary

---

[11]*Id.*

[12]*Id.* at 251–52.

[13]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[14]*Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp.*, 477 U.S. at 325).

[15]*Id.*

[16]*Id.*

[17]*See Scott v. Harris*, ___U.S.___, 127 S. Ct. 1769, 1774–75 (2007); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

judgment, as plaintiff has failed to specifically controvert them as required under D. Kan. R. 56.1(a).[18]

Plaintiff, an African-American, interviewed for a manager-in-training position at Houlihan's during an open house at J. Gilbert's Wood-Fired Steaks and Seafood restaurant ("J. Gilbert's") in McLean, Virginia. Ryan Doerr, General Manager of the McLean J. Gilbert's, was one of the managers to interview plaintiff during the open house. Plaintiff was ultimately selected and hired for the manager-in-training program and began his employment with Houlihan's on August 1, 2005, and concluded employment on September 22, 2005. Houlihan's managers-in-training are required to undergo nine weeks of training. Plaintiff's training, during this nine week period, included training at J. Gilbert's locations in McLean, Virginia and Overland Park, Kansas.

On September 6, 2005, plaintiff flew to Kansas City to begin his training at the Overland Park J. Gilbert's, but he missed his 8:28 a.m. scheduled flight. On September 7, 2005, plaintiff arrived to work ten minutes late. On September 9 and September 10, plaintiff was fifteen minutes late to work. Bill Cusick, General Manager of the Overland Park J. Gilbert's, verbally counseled plaintiff regarding his tardiness and its adverse impact on plaintiff's training. Two days later, on September 12, plaintiff arrived to work five minutes late. Plaintiff was fifteen minutes late to work again on September 16. Doerr was notified of plaintiff's ongoing tardiness during his training.

Prior to his return to Virginia, plaintiff received his work schedule for the McLean

---

[18]That rule provides: "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." D. Kan. Rule 56.1(a).

J. Gilbert's from his Overland Park co-worker, Wade Hilton.  Plaintiff also had a hand-written note of his schedule for Monday, September 19 through Wednesday, September 21 that substantially matched the manager's schedule posted at the McLean J Gilbert's.  Additionally, on Monday, September 19, plaintiff attended a manager's meeting at the McLean J Gilbert's and the agenda stated, "manager's schedule included."

Plaintiff called in late for his first scheduled shift, September 19, at the McLean J. Gilbert's.  He spoke with an hourly employee instead of the General Manager or another manager on duty, in violation of Houlihan's employment policy.  The next day, plaintiff failed to show up for a training session.  Doerr later found plaintiff "laying back in his car with his eyes closed."  Plaintiff returned to work later that afternoon.  On September 21, plaintiff arrived ten minutes late to work.  The following day, September 22, plaintiff arrived approximately five hours late to work and was terminated by Doerr for excessive tardiness.

During his time in Overland Park, plaintiff contends that Cusick and Hilton followed him around J. Gilbert's "harassing him whenever they could."  Plaintiff further contends that Cusick yelled at him.  Plaintiff testified that he viewed Hilton as a peer and was not intimidated by either Hilton or Cusik.  Plaintiff testified that, at one point, Cusick said to him, "you have a fucking attendance problem, and if I were Ryan I would fire your fucking ass."  Plaintiff later testified that Cusick said "black ass" instead of "fucking ass" when making this statement.  Plaintiff never reported the alleged harassment to anyone other than a Houlihan's hostess, Debbie Collins.  Collins testified that she never heard any profanity or racial slurs used by Cusick or Hilton relating to plaintiff.  Furthermore, she did not see nor hear Hilton or Cusick do or say anything rude or inappropriate to the plaintiff.

### III. Discussion

#### A. Discriminatory Discharge

Plaintiff claims defendant terminated him based on his race. For purposes of summary judgment, the Court applies the familiar *McDonnell Douglas* burden-shifting framework.[19]

> Under this framework, the plaintiff must first establish a prima facie case of prohibited employment action. If the plaintiff does so, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its adverse employment action. If the employer satisfies this burden, summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.[20]

#### 1. Prima Facie Case

To succeed on a Title VII claim, plaintiff must show that: "(1) he belongs to a protected class; (2) he was qualified for his job; (3) despite his qualifications, he was discharged; and (4) the job was not eliminated after his discharge.[21] Defendant argues that plaintiff cannot sustain his prima facie case because he cannot show that he was treated less favorably than his counterparts who were not African-American. Contrary to defendant's assertion, the Tenth Circuit has made clear that a prima facie case of discrimination does not require comparison with a person outside the protected class.[22] Instead, the issue of whether plaintiff was treated differently from similarly-situated employees is more appropriately analyzed in the pretext stage

---

[19]*See Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1220 (10th Cir. 2007) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)).

[20]*Id*. (citations and quotations omitted).

[21]*Nguyen v. Gambro BCT,* Inc., 242 F. App'x 483, 488 (10th Cir. 2007) (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1229 (10th Cir. 2000)).

[22]*See Kendrick* , 220 F.3d at 1229.

of the *McDonnell Douglas* burden-shifting test.[23] The burden of establishing a case of discriminatory discharge is not onerous. Thus, for purposes of the instant motion, the Court assumes that plaintiff has satisfied his prima facie case.

### 2. Legitimate Nondiscriminatory Reason

Defendant asserts that plaintiff was terminated for excessive tardiness and for sleeping on the job. Defendant has met its burden to articulate facially nondiscriminatory reasons for the adverse employment action.

### 3. Pretext

Under the third step of the *McDonnell Douglas* framework, the burden shifts back to plaintiff to show that defendant's stated reasons are merely a pretext to hide race discrimination.[24] Defendant asserts that it is entitled to summary judgment because plaintiff has produced no evidence from which a jury could conclude that the real reason for plaintiff's termination was his race. The relevant issue is not whether the stated reasons for discrimination were wise, fair or correct, but whether defendant honestly believed in those reasons and acted in good faith.[25] In examining the issue, a court must "look to the facts as they appear to the person making the decision" regarding the adverse action.[26] It is not the court's role to second guess an employer's business judgment.[27]

---

[23]*Id*. at 1229 n.8 (explaining that such evidence can be used as part of a prima facie case, but is not required, and is also appropriately used in assessing whether a plaintiff has shown that the defendant's justification for the discharge was pretextual).

[24]*Id*. at 1230.

[25]*Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004).

[26]*Kendrick*, 220 F.3d at 1231.

[27]*Stover*, 382 F.3d at 1076.

A plaintiff can show pretext by pointing to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence."[28] While this burden is not onerous . . . it is also not empty or perfunctory."[29]  A plaintiff typically makes a showing of pretext in one of three ways: (1) evidence that defendant's stated reason for the adverse employment action was false, *i.e.* unworthy of belief; (2) evidence that defendant acted contrary to a written company policy prescribing the action to be taken under the circumstances; or (3) evidence that defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting plaintiff.[30]  In addition, in the context of a discrimination case, evidence of pretext may include whether plaintiff was treated differently from similarly-situated employees.[31]

The significance of plaintiff's failure to respond to defendant's Motion for Summary Judgment is apparent at this point of the Court's analysis.  Under D. Kan. Rule 56.1, "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." Thus, all of the factual issues regarding the validity of defendant's reason for terminating plaintiff are established for purposes of this motion.

Plaintiff has provided no evidence to show pretext, and has waived his right to file a

---

[28]*Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quotations omitted).

[29]*Id.* at 1323-24.

[30]*Kendrick*, 220 F.3d at 1230.

[31]*See Watts v. City of Norman*, 270 F.3d 1288, 1293 (10th Cir. 2001); *EEOC v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1194 n.6 (10th Cir. 2000).

response.[32]  Thus, plaintiff cannot make additional findings to show pretext, and has failed to meet his burden of showing that defendant's reason for terminating his employment was pretextual.  Defendant has demonstrated that "there is no genuine issue of material fact" on plaintiff's discriminatory discharge claim and that it "is entitled to judgment as a matter of law."[33]  The Court does not grant summary judgment simply because plaintiff has failed to respond to the motion, but because summary judgment is "appropriate" under Rule 56(e).

### B.    Racial Harassment

Plaintiff alleges that he was subjected to discrimination based on his race in the form of a racially-hostile work environment.  To survive defendant's motion for summary judgment on this claim, plaintiff "must show that a rational jury could find that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive environment."[34]  The plaintiff must show that he was "targeted for harassment because of his race or national origin."[35]  In evaluation whether the alleged harassment is sufficiently severe or pervasive, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employer's work performance."[36]  The court analyzes the

---

[32] D. Kan. Rule 7.4.

[33] Fed. R. Civ. P. 56(c).

[34] *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quotation omitted).

[35] *Id.* (quotation omitted).

[36] *See Trujillo v. Univ. of Colo. Health Sci. Ctr.*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

atmosphere both objectively and subjectively, looking at all the circumstances from the perspective of a "reasonable person in the plaintiff's position."[37]

In this case, plaintiff alleges he suffered one sporadic racial comment: Cusick's statement that "You have a fucking attendance problem. If I were Ryan, I wold fire your [fucking] black ass." Defendant asserts that this comment, as a matter of law, is insufficient to constitute a racially hostile work environment. "A plaintiff does not make a showing of pervasively hostile work environment by 'demonstrating a few isolated incidents of racial enmity or sporadic racial slurs.' Instead, there must be a steady barrage of opprobrious racial comments."[38] The Court agrees that no reasonable jury could find that this inappropriate comment amounts to sufficiently severe or pervasive conduct to amount to a racially hostile work environment. Accordingly, plaintiff's racial harassment claim is without merit.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 38) is GRANTED.

IT IS SO ORDERED.

Dated:  December 10, 2008

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT
JUDGE

---

[37]*McCowan v. All Star Maintenance, Inc.*, 273 F.3d 917, 923 (10th Cir. 2001) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

[38]*Herrera*, 474 F.3d at 680 (quoting *Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005)).